O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| ERNIE GONZALEZ, | Case No. CV 14-1755-JVS (DFM) |
|              Petitioner, | |
|         v. | Final Report and Recommendation of United States Magistrate Judge |
| MONTGOMERY, Warden, | |
|              Respondent. | |

This Final Report and Recommendation is submitted to the Honorable James V. Selna, United States District Judge, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.[1]

///

///

///

---

[1] The Court has issued this Final Report and Recommendation to address an issue raised by Petitioner in his objections to the original Report and Recommendation. See infra n. 4.

# I.

# BACKGROUND

**A.**   **Procedural History**

A Los Angeles County Superior Court jury convicted Petitioner Eddie Gonzalez of one count of first degree murder and one count of attempted first degree murder. Supplemental Clerk's Transcript ("Supp. CT") 256-57. The jury also found true the allegations that Petitioner committed the offenses for the benefit of a criminal street gang and that Petitioner personally and intentionally discharged a firearm that caused great bodily injury or death. Id. The trial court sentenced Petitioner to an indeterminate term of 50 years to life, plus an additional consecutive life term, plus a consecutive indeterminate term of 25 years to life in state prison. Supp. CT 268-72.

Petitioner filed a direct appeal. The California Court of Appeal affirmed the judgment in a reasoned decision on the merits. Respondent's Notice of Lodging, Lodged Document ("LD") 4. Petitioner filed a petition for review in the California Supreme Court, which was summarily denied. LD 6.

On March 10, 2014, Petitioner filed a Petition for Writ of Habeas Corpus in this Court, which raised four grounds for relief. Dkt. 1 ("Petition"); Dkt. 2 ("Petition Attachment"). On March 31, 2014, Petitioner withdrew his third and fourth grounds for relief. Dkt. 8. Accordingly, the Petition raises two claims for relief: (1) a claim that Petitioner's right to due process was violated by the trial court's admission of testimony by a gang expert regarding prior incidents of inter-gang violence ("Ground One"); and (2) Petitioner's Sixth Amendment right to confrontation was violated by admission of hearsay evidence as a basis for the gang expert's testimony ("Ground Two"). Petition at 6; Petition Attachment at 1-14.[2] Respondent filed an answer to the Petition.

---

[2] All page citations are to the CM/ECF pagination.

Dkt. 23 ("Answer"). Petitioner did not file a reply.

**B.   Summary of the Evidence Presented at Trial**

The underlying facts are taken from the unpublished opinion of the California Court of Appeal.[3] Unless rebutted by clear and convincing evidence, these facts are presumed correct. Tilcock v. Budge, 538 F.3d 1138, 1141 (9th Cir. 2008); 28 U.S.C. § 2254 (e)(1). Petitioner has not attempted to overcome the presumption with respect to the underlying events.

Little Valley is a criminal street gang operating in East Los Angeles. Bonifacio Marcelo testified that when he was 13 years old, he was a member of Little Valley. His sister, Griselda Marcelo, was not a member of Little Valley.

Bonifacio testified that he lived with his parents and Griselda and that their residence was within Little Valley's territory. When Bonifacio was 19 years old, he decided that he no longer wanted to be a member of Little Valley, but to leave Little Valley he needed to obtain permission from the well-respected members of the gang. Bonifacio never obtained that permission, and he moved to Las Vegas for approximately three years. Around April 2008, Bonifacio moved back to Los Angeles and lived with his parents and Griselda again.

Bonifacio testified that he was familiar with high-ranking members of Little Valley. On October 16, 2008, Bonifacio spoke to "Nani," a "vetereno" and the oldest member of Little Valley. Nani asked Bonifacio if Bonifacio knew of a person who sold guns because Nani needed one for his nephew, Jaimez, because Jaimez

---

[3] In all quoted sections of the Report and Recommendation, the term "Defendant" has been replaced with "Petitioner."

had just been released from jail. Bonifacio responded that he did not know where to buy a gun. Bonifacio did not know that it was a sign of disrespect to say no to a veteran, and he was not trying to disrespect Nani when he responded.

Bonifacio testified that Jaimez was a member of Little Valley and that his moniker was "Vago." Los Angeles County Sheriff's Department Detective Ignacio Lugo, the prosecution's gang expert, testified that Petitioner was a "shot caller" (one who dictates certain activities) and a high-ranking, well-respected member of Little Valley, and his moniker was "Big Sneaks." Petitioner had several gang-related tattoos, including "LV" tattooed on his chest and "Eastside" tattooed on his stomach.

Bonifacio testified that on October 17, 2008, at approximately 12:00 noon, Bonifacio and Griselda left their home together. About 20 minutes later, they met some of Griselda's friends at the intersection of Eastman Avenue and Princeton Street, and a white Toyota and a red Intrepid were driven by them. After Griselda finished talking with her friends, Bonifacio and Griselda began walking again. The white Toyota and a red Intrepid returned and passed by them again. Griselda pointed to the driver of the white Toyota and said, "Look. There's homie Vago." The white Toyota and a red Intrepid made a u-turn, drove toward Bonifacio and Griselda again, and stopped. Bonifacio saw Jaimez, who was driving the Toyota, and Petitioner, who was in the passenger seat of the Toyota.

Bonifacio testified that Petitioner asked him, "Where you from?" and pulled out a chrome colored revolver. Bonifacio replied, "No where" [sic].

Detective Lugo testified that when a gang member asks another member, "where you from?," the other gang member is expected to claim his gang. The question Petitioner asked Bonifacio means, "Are you loyal to [Little Valley]?" If the other gang member responds "nowhere," it is "very disrespectful." A person telling a gang member that he is no longer part of the gang may be considered more disrespectful than just moving out of the neighborhood. If a person states that he is no longer part of the gang, the gang would retaliate against him, including the person being physically assaulted, shot, or killed.

Bonifacio testified that in response to his stating, "No where" [sic]. Petitioner stated, "Fuck Little Valley" and started shooting. Bonifacio ran behind a truck but he was shot in the left leg. Griselda fell to the ground. Los Angeles County Coroner's Office Medical Examiner Ajay Panchal testified that Griselda sustained two fatal gunshot wounds. Bonifacio testified that the Toyota and Intrepid were driven away immediately after the shootings.

Bonifacio testified that sheriff's deputies arrived at the scene of the shootings, but Bonifacio "didn't say anything" to them about the shooting because he feared further retaliation if he did so. Once Bonifacio learned that Griselda had died, he told the police what had occurred. Los Angeles County Sheriff's Department Detective James Charles testified that a murder weapon was never found.

Detective Lugo testified that Little Valley was a "traditional" gang that has existed for approximately 60 years and has approximately 100 members. A gang's territory is the gang's

"heart;" it is "what they fight for ... and what they'll kill for." Little Valley's territory is bordered by Indiana Street to the west, Whittier Boulevard to the south, Downey Road to the east, and Interstate 5 to the north. In order to establish their territory, a gang must commit crimes within that territory. This creates an atmosphere of fear and intimidation, and dissuades witnesses of crimes from reporting the crimes and testifying in court. The primary activities of Little Valley include tagging, automobile thefts, narcotic sales, transportation of narcotics, burglaries, transportation of weapons, extortions, kidnapping, assaults, drive-by shootings, attempted murders, and murders.

Certified court orders of two cases in which Ilene Munoz and Jose Viera were named as defendants were introduced to establish that they had been convicted in about March 2008 of assault with a deadly weapon or assault by means likely to produce great bodily injury. Detective Lugo testified that Munoz and Viera were Little Valley gang members at the time they committed the crime. Detective Lugo did not state how he knew Munoz was a gang member, but he said that the basis for his information that Viera was a gang member was that "other detectives that handled the case" had "mentioned" it.

The prosecutor asked Detective Lugo to assume, hypothetically, facts closely tracking the evidence concerning the shootings of Bonifacio and Griselda. Based on those facts, Detective Lugo opined that the shootings would have been committed for the benefit of, at the direction of, and in association with a criminal street gang, and would have been an effort to promote, further, or assist criminal conduct by gang members.

Detective Lugo stated that the basis for his opinion was, inter alia, that a gang considers it "wrong" for someone like Bonifacio, who disassociated himself from a gang without permission, to "just show back up" in the gang's territory. It is disrespectful for someone like Bonifacio, a former low-level gang member, to refuse to attempt to procure a firearm for a well-respected gang member. When the person is asked by a gang member, "Where are you from," and responds, "nowhere," the person like Bonifacio is essentially communicating to the gang member that the person "turn [ed] his back" to the gang and is "basically telling the gang to fuck off." A shooting under the circumstances reinforces the fear and intimidation within the community. When a gang member kills another member of that gang—i.e., when the gang is "cleaning house," thereby "tightening up the ship"—all of the other members of that gang "are going to know either you're in or you're out," and members of rival gangs will know that the killing gang is "serious." The shootings of Bonifacio and Griselda occurred in or near Little Valley's territory.

LD 4 at 3-7.

## II.

## STANDARD OF REVIEW

Petitioner's claims are subject to the provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, federal courts may grant habeas relief to a state prisoner "with respect to any claim that was adjudicated on the merits in State court proceedings" only if that adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2)

1  resulted in a decision that was based on an unreasonable
2  determination of the facts in light of the evidence presented in the
3  State court proceeding.

4  28 U.S.C. § 2254(d).

5  Overall, AEDPA presents "a formidable barrier to federal habeas relief
6  for prisoners whose claims have been adjudicated in state court." Burt v.
7  Titlow, --- U.S. ---, 134 S. Ct. 10, 16 (2013). AEDPA presents "a difficult to
8  meet and highly deferential standard for evaluating state-court rulings, which
9  demands that state-court decisions be given the benefit of the doubt." Cullen v.
10 Pinholster, --- U.S. ---, 131 S. Ct. 1388, 1398 (2011) (quotations omitted). The
11 prisoner bears the burden to show that the state court's decision "was so
12 lacking in justification that there was an error well understood and
13 comprehended in existing law beyond any possibility for fairminded
14 disagreement." Harrington v. Richter, 562 U.S. 86, 103 (2011). In other words,
15 a state-court "determination that a claim lacks merit precludes federal habeas
16 relief so long as fairminded jurists could disagree on the correctness" of that
17 ruling. Id. at 101. Federal habeas corpus review therefore serves as "a guard
18 against extreme malfunctions in the state criminal justice systems, not a
19 substitute for ordinary error correction through appeal." Id. at 102-03 (internal
20 quotation omitted).

21 Here, Petitioner raised his claims on direct appeal and those claims were
22 denied by the California Court of Appeal in a reasoned decision. See LD 4.
23 These claims were then presented in Petitioner's petition for review, which the
24 California Supreme Court summarily denied. See LD 5. Thus, for purposes of
25 applying the AEDPA standard of review, the California Court of Appeal
26 decision on direct appeal constitutes the relevant state court adjudication on
27 the merits for the claims presented in Grounds One and Two. See Johnson v.
28 Williams, --- U.S. ---, 133 S. Ct. 1088, 1094 n.1 (2013) (noting that federal

8

habeas court "look[s] through" summary denial of claim to last reasoned decision from state courts to address the claim).

**III.**

**DISCUSSION**

**A.   Gang Expert Testimony**

In Ground One, Petitioner contends that his right to due process was violated when the trial court allowed the gang expert, Detective Lugo, to testify about five prior incidents in which a Little Valley gang member shot another Little Valley member. Petitioner argues that this testimony was irrelevant, cumulative, and more prejudicial than probative. Petition at 6; Petition Attachment at 3-9.

**1.   Factual Background**

The California Court of Appeal described the factual background of this claim as follows:

> Petitioner filed a motion to exclude expert testimony about the five prior gang-related shootings on the grounds that, inter alia, the evidence was irrelevant, and it was substantially more prejudicial than probative under Evidence Code section 352. The trial court denied the motion, stating, "I [will] not allow specifics of the prior shootings, but the fact that there were prior shootings, [and] they are not going to be connected to either [Petitioner or Jaimez], but that there were just, in general, prior shootings of Little Valley on Little Valley." The trial court then granted the request of Petitioner's counsel to ask the prosecutor's gang expert whether anyone had ever been arrested, tried or convicted for any of the prior shootings without it "opening the door" to the specifics about the prior shootings, stating, "I think that's reasonable."

9

At trial, Detective Lugo testified that when a gang member kills a member of his own gang, it is sometimes called "cleaning house" or "tightening up the ship." One reason to "clean house" is to discipline a disloyal member. Detective Lugo testified that if a person "disappear[s] from the gang without ... getting permission in the modern way of doing things, and [that person] start[s] showing up, and they suspect you of doing things against the gang, [that person] would be considered disloyal, disrespectful. [That person] is not following orders. [That person does not] want to pick up where [that person] left off for the gang."

Detective Lugo testified that Little Valley "cleaned house" in 2001, involving two high-ranking gang members, June 2005, July 2005, November 2005, and December 2006. There was an arrest and conviction for the incident that occurred in 2001, and during the trial regarding that incident a Little Valley gang member testified against another Little Valley gang member. No one had ever been prosecuted for or convicted of the other four incidents. Detective Lugo was the lead investigator concerning some of those incidents and he ran into "problems with getting people to cooperate in court." Detective Lugo and other gang investigators in east Los Angeles have used the phrases "in-house cleaning" or "cleaning house" with one another concerning Little Valley.

After the introduction of evidence, the trial court instructed the jury under CALCRIM No. 1403, modified, as follows: "You may consider evidence of gang activity only for the limited purpose of deciding whether: [¶] The defendant acted with the intent, purpose and knowledge that are required to prove the gang-

related crimes and enhancements charged; [¶] or the defendant had a motive to commit the crimes charged. [¶] You may also consider this evidence when you evaluate the credibility or believability of a witness and when you consider the facts and information relied on by an expert witness in reaching his or her opinion. [¶] You may not consider this evidence for any other purpose. You may not conclude from this evidence that the defendant is a person of bad character or that he has a disposition to commit crime."

During closing argument, Petitioner's counsel argued that the shootings of Bonifacio and Marcelo were not Little Valley "in-house shootings," but rather were committed by a rival gang member.

LD 4 at 13-15.

### 2. Decision of the California Court of Appeal

The state appellate court rejected Petitioner's claim:

Contrary to Petitioner's contention, the evidence of Little Valley's prior "in-house shootings" was relevant to establish that the attempted murder of Bonifacio was gang related and that Petitioner had a motive to commit the crimes charged—i.e., to discipline a member for leaving the gang without permission.

Petitioner contends that the evidence was irrelevant because it was unknown who committed the prior Little Valley shootings or the reason they occurred. Detective Lugo, however, testified that the persons who committed the prior Little Valley shootings were Little Valley gang members. Detective Lugo was the lead investigator concerning some of the incidents of Little Valley cleaning house. Detective Lugo testified that when a gang member kills a member of his own gang, it is sometimes called "cleaning

11

house," and he and other gang investigators had used the phrases "cleaning house" and "in-house cleaning" with one another concerning Little Valley.

Detective Lugo also testified about the reasons that the incidents of cleaning house occur—to discipline a disloyal member. He testified that they occur when a person "disappear[s] from the gang without ... getting permission in the modern way of doing things, and [that person] start[s] showing up, and they suspect you of doing things against the gang, [that person] would be considered disloyal, disrespectful. [That person] is not following orders. [That person does not] want to pick up where [that person] left off for the gang."

Petitioner contends that the evidence was substantially more prejudicial than probative. "Relevant evidence may nonetheless be excluded under Evidence Code section 352 at the trial court's discretion if 'its probative value is substantially outweighed by the probability that its admission will ... create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' ... (People v. Ledesma (2006) 39 Cal.4th 641, 701.)" (People v. Richardson (2008) 43 Cal.4th 959, 1000–1001.) " 'The "prejudice" referred to in Evidence Code section 352 applies to evidence which uniquely tends to evoke an emotional bias against the defendant as an individual and which has very little effect on the issues. In applying section 352, "prejudicial" is not synonymous with "damaging." ' [Citation.]" (People v. Karis (1988) 46 Cal.3d 612, 638; see People v. Kipp (2001) 26 Cal.4th 1100, 1121.)

Petitioner contends that the evidence was prejudicial because "the testimony on the prior unresolved murders amounted

to guilt by association.... Undoubtedly, the jury made the connection that not only was [Petitioner] violent, but he was probably somehow involved in the prior unsolved murders." The jury, however, was instructed that the evidence of gang activity was admitted for the limited purpose of proving the gang enhancement and to show motive, and that it could not be considered for any other purpose, including as character evidence. We presume the jury followed the trial court's instructions. (People v. Avila (2009) 46 Cal.4th 680, 719; People v. Bennett (2009) 45 Cal.4th 577, 596; People v. Johnson (2009) 180 Cal.App.4th 702, 710.) It is almost an "'invariable assumption of the law that jurors follow their instructions.' [Citation.] '[We] presume that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them.' [Citation.]" (United States v. Olano (1993) 180 Cal.App.4th 702, 740.)

Petitioner contends that the evidence of Little Valley's "in-house shootings" was cumulative to Detective Lugo's testimony "that gang members could be disciplined or killed for many different reasons," including for leaving the gang without permission, and disrespecting a higher ranking gang member. Evidence of the incidents of Little Valley cleaning house was not cumulative, warranting exclusion. Petitioner's defense was that the shootings of Bonifacio and Marcelo were not "in-house shootings," but rather were committed by a rival gang member. Evidence of Petitioner's motive to commit the crimes, therefore, was essential to the prosecution's case against him. In addition,

the introduction of the contested evidence did not involve an undue consumption of time because the trial court precluded the prosecutor from eliciting testimony about the specifics of the prior Little Valley intra-gang shootings, while allowing Petitioner's counsel to ask the prosecutor's gang expert whether anyone had ever been arrested, tried or convicted for any of the prior shootings without it "opening the door" to the specifics about the prior shootings.

"'Evidence that is identical in subject matter to other evidence should not be excluded as "cumulative" when it has greater evidentiary weight or probative value.' (People v. Mattson (1990) 50 Cal.3d 826, 871 [268 Cal.Rptr. 802, 789 P.2d 983].)" (People v. Filson (1994) 22 Cal.App.4th 1841, 1851, overruled on other grounds as stated in People v. Martinez (1995) 11 Cal.4th 434, 452.) Evidence of actual instances of Little Valley's cleaning house has greater evidentiary weight and probative value than Detective Lugo's testimony that gang members "could" be disciplined or killed. Accordingly, the trial court did [not] err in admitting the evidence.

LD 4 at 15-18.[4]

--------

[4] The word "not" in the final sentence of the quotation above from the California Court of Appeal's unpublished decision was omitted. It is clear to the Court from reading the state appellate court's analysis that the omission was a typographical error. Petitioner relied on this omission in his Objections, noting that the California Court of Appeal acknowledged that the evidence was erroneously admitted but failed to analyze whether the error was harmless. See Objections to Report and Recommendation, filed April 10, 2015, at 7 & n.4.

3.     Analysis

A state court's misapplication of state evidentiary law or of its own precedent, in and of itself, is not a basis for federal habeas relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("[W]e reemphasize that it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); Lincoln v. Sunn, 807 F.2d 805, 816 (9th Cir. 1987) ("Incorrect state court evidentiary rulings cannot serve as a basis for habeas relief unless federal constitutional rights are affected."). Thus, to the extent that Petitioner contends that the trial court's admission of Detective Lugo's testimony regarding prior intra-gang murders committed by Little Valley members violated California state evidentiary law, he fails to state a cognizable claim for federal habeas relief. Furthermore, this Court is bound by the California Court of Appeal's conclusion that the trial court did not err in ruling the evidence admissible under California Evidence Code § 352. See Bradshaw v. Richey, 546 U.S. 74, 76 (2005) (reiterating that state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court on habeas review).

Generally, a state court's decision to admit specific evidence is not subject to federal habeas review unless the evidentiary ruling violates federal law or deprives the defendant of a fundamentally fair trial. Estelle, 502 U.S. at 75 (finding federal habeas relief inappropriate where admission of evidence was not so unfair as to result in a denial of due process); Dowling v. United States, 493 U.S. 342, 352 (1990) (analyzing "whether the introduction of this type of evidence is so extremely unfair that its admission violates 'fundamental conceptions of justice'" (citation omitted)). The Ninth Circuit has noted that a habeas petitioner bears a "heavy burden" in demonstrating a due process violation on the basis of a state court's evidentiary decision, as he must show that there were "no permissible inferences" the jury could draw from the

challenged evidence. <u>Boyde v. Brown</u>, 404 F.3d 1159, 1172 (9th Cir. 2005).

Although Petitioner argues that the admission of evidence of five prior murders of Little Valley gang members by other Little Valley members violated his federal due process rights, there is no clearly established Supreme Court law mandating exclusion of this type of evidence by a gang expert. Accordingly, the state appellate court could not have unreasonably applied clearly established federal law when it rejected Petitioner's claim on direct appeal. <u>See</u> <u>Holley v. Yarborough</u>, 568 F.3d 1091, 1101 (9th Cir. 2009) ("Although the Court has been clear that a writ should be issued when constitutional errors have rendered the trial fundamentally unfair, it has not yet made a clear ruling that admission of irrelevant or overtly prejudicial evidence constitutes a due process violation sufficient to warrant issuance of the writ.") (citation omitted); <u>see also</u> <u>Mejia v. Garcia</u>, 534 F.3d 1036, 1046 (9th Cir. 2008) (holding that state trial court's admission of propensity evidence did not clearly established federal law); <u>Alberni v. McDaniel</u>, 458 F.3d 860, 866-67 (9th Cir. 2006) (same).

Moreover, because there were permissible inferences which could be drawn from the evidence, it cannot be said that its admission rendered Petitioner's trial so "fundamentally unfair" as to violate due process. <u>See</u> <u>Holley</u>, 568 F.3d at 1101. Here, the evidence regarding the intra-gang murders of Little Valley members was relevant to prove the gang-related sentencing enhancement, as well as to explain Petitioner's motive in shooting a fellow Little Valley member, which was to discipline Bonifacio for leaving the gang without permission. <u>See</u> <u>Windham v Merkle</u>, 163 F.3d 1092, 1103-04 (9th Cir. 1998) (admission of testimony regarding gang involvement did not violate defendant's due process rights because the evidence was relevant to establish the defendant's motive in committing the charged offenses).

In addition, the jury was specifically instructed that it could consider this

evidence only for the purposes of deciding whether the shooting was gang-related and to establish Petitioner's motive, and that it could not consider the testimony as evidence of Petitioner's bad character. 12 Reporter's Transcript ("RT") 7927-28; Supp. CT 249-50. A jury is presumed to follow its instructions when reaching a verdict. See Weeks v. Angelone, 528 U.S. 225, 234 (2000).

Finally, even if the Court assumes that the trial court's ruling was clearly contrary to or an unreasonable application of Supreme Court precedent, such an error justifies relief "only if the error had a 'substantial and injurious effect or influence in determining the jury verdict.'" Stark v. Hickman, 455 F.3d 1070, 1072 (9th Cir. 2006) (quoting Penry v. Johnson, 532 U.S 782, 795 (2001)); see also Brecht v. Abramson, 507 U.S. 619, 637 (1993). Such a showing is not made where the evidence of guilt is, "if not overwhelming, certainly weighty" and "other circumstantial evidence . . . also point[s] to petitioner's guilt." Brecht, 507 U.S. at 639.

Here, it cannot be said that any alleged error had a substantial and injurious effect or influence on the jury's verdict. Bonifacio testified that he knew Petitioner as a fellow Little Valley gang member before the murder occurred and that he was able to clearly view Petitioner during the shooting. 10 RT 7368, 7380-89. Shortly after the shooting, Bonifacio told police, "I know who shot my sister. It was Big Sneaks." 9 RT 6988-90, 7000-02; 10 RT 7409-14. Petitioner's gang moniker was "Big Sneaks." 10 RT 7251-52. Bonifacio also identified Petitioner's picture from a photographic lineup. 9 RT 6988-93. Finally, Bonifacio positively identified Petitioner as the shooter at trial. 10 RT 742-21, 7448, 7457. In addition, Detective Lugo's testimony about the in-house shootings was brief, consisting of only three transcript pages, and Detective Lugo did not testify as to the details. 10 RT 7267-69. Accordingly, given the weighty evidence of Petitioner's guilt and the fact that the evidence of the prior Little Valley shootings was minimized at trial, any alleged error in

admitting this evidence did not have a substantial and injurious effect on the jury's verdict. Habeas relief is not warranted on this claim.

**B.   Confrontation Clause**

In Ground Two, Petitioner contends that his Sixth Amendment right to confrontation was violated when Detective Lugo was allowed to base his opinions on inadmissible testimonial hearsay. Specifically, Petitioner argues that the Confrontation Clause barred admission of Detective Lugo's testimony regarding the five intra-gang shootings, his testimony about Little Valley's "primary activities," and his opinion that Ilene Munoz and Jose Viera were Little Valley gang members at the time they committed an assault. Petition at 6; Petition Attachment at 10-15.

**1.   Decision of the California Court of Appeal**

The state appellate court determined that Petitioner forfeited this argument because defense counsel did not object to Detective Lugo's testimony on the basis that it violated the Confrontation Clause. LD 4 at 18-20. However, the appellate court also rejected the claim on the merits:

> Relying primarily on Crawford v. Washington (2004) 541 U.S. 36 (Crawford), Petitioner contends that the trial court violated his right to confrontation under the Sixth Amendment by allowing Detective Lugo, in his expert testimony, to rely on inadmissible hearsay statements of others. We disagree.
>
> ***
>
> Even if Petitioner had objected that his right to confrontation was violated, in view of the applicable opinions, which, as we note, cannot be applied to the issue here with any certainty, and the state of the record, we conclude there was not a sufficient showing of a violation. The confrontation clause of the Sixth Amendment provides: "In all criminal prosecutions, the

18

accused shall enjoy the right ... to be confronted with the witnesses against him." The United States Supreme Court held in <u>Crawford</u>, <u>supra</u>, 541 U.S. 36 at pp. 53–54 that the confrontation clause "bars 'admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" (<u>Davis v. Washington</u> (2006) 547 U.S. 813, 821.)

Although Petitioner contends that his constitutional right to confrontation was violated when Detective Lugo testified about Little Valley's primary criminal activities, that Munoz was a Little Valley gang member at the time she committed the crime of assault, and that "in-house shootings" occurred between Little Valley Gang members, Petitioner does not identify the person or persons he contends he had a right to confront, nor does he specify the out-of-court statements upon which Detective Lugo purportedly based his testimony and upon which Petitioner relies. Petitioner concedes that "the specific source of [Detective Lugo's] information" about Little Valley's primary criminal activities "is unclear," he "did not state how he knew [that Munoz] was a gang member," and "it is not clear from Detective Lugo's testimony the source of his information regarding" the Little Valley "in-house shootings." Similarly, Petitioner contends that his right to confrontation was violated when Detective Lugo testified that he was familiar with the facts of the assault committed by Munoz and Viera on about March 18, 2008, because he "spoke to the investigator," but neither Petitioner nor the record identify the investigator, the investigator's statements, or the circumstances under which the investigator's statements were made. Based on

the record, we cannot say that Detective Lugo's testimony that was purportedly based on certain unspecified out-of-court statements made by unspecified sources violates Petitioner's right to confrontation.

Petitioner also contends that his constitutional right to confrontation was violated when certified court orders of two cases in which Munoz and Veira were named as defendants were introduced into evidence to establish that they had been convicted of assault with a deadly weapon or assault by means likely to produce great bodily injury. Petitioner, however, did not establish that the certified court documents served as a basis for Detective Lugo's testimony. Detective Lugo merely testified that he is aware of the convictions of Munoz and Veira, but he did not state the basis of his awareness. In addition, assuming Detective Lugo did rely on these certified court documents in testifying, Petitioner's right of confrontation was not violated because the documents were certified court records, and there is no legitimate basis upon which Petitioner may cross-examine the person who prepared them.

As noted above, the United States Supreme Court held in Crawford, supra, 541 U.S. 36 at pp. 53–54 that the confrontation clause bars the admission of testimonial statements of an out-of-court witness who defendant was not permitted to cross-examine, but "[t]he Crawford court did not define the term 'testimonial,' and the United States Supreme Court has still not agreed upon a definition." (People v. Holmes (2012) 212 Cal.App.4th 431, 437.) "Although the high court has not agreed on a definition of 'testimonial,' testimonial out-of-court statements have two critical

components. First, to be testimonial, the statement must be made with some degree of formality or solemnity. Second, the statement is testimonial only if its primary purpose pertains in some fashion to a criminal prosecution." (People v. Dungo (2012) 55 Cal.4th 608, 619; People v. Lopez (2012) 55 Cal.4th 569, 581–582.) "It is now settled in California that a statement is not testimonial unless both criteria are met." (People v. Holmes, supra, 212 Cal.App.4th at p. 438.)

Petitioner contends that his right to confrontation was violated when Detective Lugo testified that Viera was a Little Valley gang member at the time he committed the crime of assault because Detective Lugo said that the basis for his information was that "other detectives that handled the case" had "mentioned" it. The record does not establish the circumstances under which the other detectives "mentioned"—whether directly to Detective Lugo, overheard by him, or otherwise—that Viera was a Little Valley gang member. Petitioner did not establish any requisite degree of formality or solemnity of the out-of-court "statement" made by the other detectives. "[T]o be testimonial the out-of-court statement must have been made with some degree of formality or solemnity. (See Crawford, supra, 541 U.S. at p. 51 ['An accuser who makes a formal statement to government officers bears testimony ...']; Melendez–Diaz, supra, 557 U.S. at p. 310 [stressing that each of the laboratory certificates determined to be testimonial was a "'solemn declaration or affirmation'"]; Bullcoming, supra, 564 U.S. ____ [131 S.Ct. at p. 2717] [the laboratory certificate found to be testimonial was "'formalized" in a signed document ... referring to ... rules' that made the document

admissible in court (citation omitted) ]....” (<u>People v. Lopez</u>, <u>supra</u>, 55 Cal.4th at p. 582.) We conclude, therefore, based on the record, that the detective having “mentioned” that Viera was a gang member was not testimonial and Petitioner's constitutional right to confrontation was not violated. Because we conclude that Petitioner did not establish any requisite degree of formality or solemnity of the out-of-court “statement,” we do not reach the issue of whether its primary purpose pertained “in some fashion to a criminal prosecution.” (<u>People v. Dungo</u>, <u>supra</u>, 55 Cal.4th at p. 619 [a statement is testimonial only if both criteria are met].)

LD 4 at 20-23.

## 2.   Analysis

As an initial matter, Respondent argues that Plaintiff's Confrontation Clause claim is procedurally defaulted because the California Court of Appeal found that Petitioner had waived the claim by failing to raise it in the first instance in the trial court. <u>See</u> Answer at 22-24. Because the merits of this claim can be easily resolved against Petitioner, the Court declines to address this procedural default argument in the interests of judicial economy. <u>See</u> <u>Lambrix v. Singletary</u>, 520 U.S. 518, 525 (1997).

The Confrontation Clause of the Sixth Amendment provides that “[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him.” U.S. Const. amend. VI. This “bedrock procedural guarantee” is applicable in both federal and state prosecutions. <u>Crawford v. Washington</u>, 541 U.S. 36, 42 (2004). “The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.” <u>Maryland v. Craig</u>, 497 U.S. 836, 845 (1990). The Confrontation Clause therefore prohibits the admission of

an out-of-court testimonial statement at a criminal trial unless the witness is unavailable to testify and the defendant had a prior opportunity for cross examination. <u>Crawford</u>, 541 U.S. at 59.

Recently, the Supreme Court reiterated that "[u]nder settled evidence law, an expert may express an opinion that is based on facts that the expert assumes, but does not know, to be true." <u>Williams v. Illinois</u>, --- U.S. ---, 132 S. Ct. 2221, 2228 (2012). Out-of-court statements that are related by the expert solely for the purpose of explaining the assumptions on which the expert's opinion rests, "are not offered for their truth and thus fall outside the scope of the Confrontation Clause." <u>Id.</u> Moreover, an out-of-court statement is testimonial only if it has "the primary purpose of accusing a targeted individual of engaging in criminal conduct" and, usually, it involves a "formalized statement[ ], such as affidavits, depositions, prior testimony, or confessions." <u>Id.</u> at 2242.

Detective Lugo testified that he acquired his knowledge and information about gangs from his work as a gang investigator. Detective Lugo stated that he formed his opinion in part by speaking with gang members on the street and in custody, and had spoken with "a couple of thousand [gang members] over the last 25 years." 10 RT 7220-21. More relevant here, Detective Lugo testified that, from 1999 to 2006, Little Valley was his "assigned gang" and he had spoken with approximately 50 to 60 of its members. 10 RT 7239. Detective Lugo also stated that he based his expert opinion on information gathered from speaking with other law enforcement officers about various gangs, and by attending training and educational programs in which gang investigators share information. 10 RT 7216, 7218-19.

Petitioner's Sixth Amendment right to confrontation was not violated. The hearsay statements Petitioner complains of – that Munoz and Viera were Little Valley members when they committed various assaults and the fact that

23

five previous murders of Little Valley gang members were committed by other Little Valley members – were not admitted for the truth of the matters asserted, but rather were relied upon by Detective Lugo in formulating his expert opinion that the charged crimes were committed for the benefit of the Little Valley gang. Numerous cases decided since <u>Crawford</u> have held that the introduction of otherwise admissible evidence in support of a gang expert witness's testimony does not violate the Confrontation Clause. <u>See, e.g.</u>, <u>United States v. Palacios</u>, 677 F.3d 234, 243-44 (4th Cir. 2012) (holding that gang expert's testimony on interviews with gang members and interactions with other law enforcement officers who specialize in gangs did not violate the Confrontation Clause); <u>Alejandre v. Brazelton</u>, No. 11-4803, 2013 WL 1729775, at *10-11 (N.D. Cal. Apr. 22, 2013) (holding that gang expert's testimony concerning the meaning of defendant's tattoos based in part on hearsay statements from undisclosed gang members did not violate the Confrontation Clause); <u>Cason v. Hedgepeth</u>, No. 08-4576, 2009 WL 1096209, at *14 (C.D. Cal. Apr. 22, 2009) (holding that gang expert's testimony premised on hearsay statements about a witness's gang membership did not violate <u>Crawford</u> because hearsay statements were not admitted for the truth of the matter asserted but rather to support the expert's opinion that the witness was a gang member).

Furthermore, the various out-of-court statements made by gang members and law enforcement officers which were relied upon by Detective Lugo in forming his expert opinion were non-testimonial in nature because "the primary purpose" of these hearsay statements "was not to accuse Petitioner or to create evidence for use at trial." <u>See</u> <u>Williams</u>, 132 S. Ct. at 2243. There is no indication that Detective Lugo obtained these statements as part of a specific investigation or for the purpose of proving a fact for possible use in a future trial. Nor does it appear that Detective Lugo reduced any of these

hearsay communications into written "formalized statements," such as affidavits, depositions, prior testimony, or confessions." Id. at 2242. Accordingly, Petitioner's Sixth Amendment confrontation rights were not violated by Detective Lugo's testimony, and Petitioner is therefore not entitled to habeas relief on this claim.

## IV.

## CONCLUSION

It therefore is recommended that the District Court issue an Order: (1) accepting this Report and Recommendation; and (2) directing that Judgment be entered denying the Petition and dismissing this action with prejudice.

Dated:  April 20, 2015

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge